CASE 88.—ACTION BY TINSLEY STEWART'S ADMINISTRA-
TRIX AGAINST THE LOUISVILLE & NASHVILLE
RAILROAD COMPANY.—February 15, 1910.

## Stewart's Admr v. L. & N. R. R. Co,

Appeal from Boyle Circuit Court.

CHARLES A. HARDIN, Circuit Judge.

From a judgment granting insufficient relief,
plaintiff appeals.—Affirmed

1.  Appeal and Error—Law of the Case.—The opinion of the
court on appeal is the law of the case on a subsequent trial,
and matters which might have been brought to the attention
of the court, but were not, are concluded by the opinion,
and where errors are made on the trial against appellee, he
must, on appeal, call the attention of the court to the errors
he wishes corrected.

2.  Appeal and Error—Harmless Error—Exclusion of Evidence.—
Where, in an action for the death of a brakeman in a wreck,
due to the unsafe condition of the track, there was evidence
of the condition of the track and the jury found negligence
in maintaining it, any error in excluding the testimony
of a witness for plaintiff that at the place where the track
gave way the old roadbed was lower than the new that was
put in was harmless, especially where that fact was proved
by plaintiff on cross-examination of the witnesses of defend-
ant.

3.  Appeal and Error—Harmless Error—Exclusion of Evidence.—
The error, if any, in excluding evidence of a party to prove
a fact shown without dispute on the cross-examination of
the witnesses of the adverse party is harmless.

4.  Master and Servant—Injury to Servant—Evidence—Admissi-
bility.—Where, in an action for the death of a brakeman in
a wreck, due to the unsafe condition of the track, defendant
claimed that the wreck occurred at a switch, defendant
could show that the ties and rails at the switch were good,
and thus show that the accident was due to a different

cause from that relied on by plaintiff, claiming that the wreck occurred at another place.

5. Master and Servant—Injury to Servant—Evidence—Admissibility.—In an action for the death of a brakeman in a wreck, due to the unsafe condition of the track, it was proper for the railroad to show the condition of the track at the place where it claimed the wreck occurred two weeks before the accident, and the changes made thereafter and before the wreck, to enable the jury to pass on the issue whether the track was reasonably safe at the time of the accident.

6. Evidence—Opinion Evidence—Competency.—The question of what is a sufficient railroad track is a matter on which experts may testify.

7. Evidence—Expert Testimony—Actions—Evidence—Cause and Effect.—In an action for the death of a brakeman in a wreck, testimony of experts who had examined the ground after the wreck that they did not know the cause thereof was admissible.

8. Trial—Argument of Counsel.—The argument of counsel for defendant in an action for the negligent death of a servant that things had come to such a pass that where a man got his finger cut he would run to a lawyer to bring a damage suit, that the jurors, who were farmers, and who had employes, could be sued if injuries occurred, or an accident happened to any employe, and that the jury had better be on their guard as to damage suits, was not improper.

9. Jury—Disqualification of Jurors.—The fact that a juror in an action against a railroad for negligent death of an employe was a relative by marriage to one of the attorneys of the railroad, that another juror had a brother in the service of the railroad, and that another juror had two nephews in its service, did not warrant the setting aside of the verdict.

10. Death—Negligent Death—Inadequate Verdict.—A verdict for $3,500 for the negligent death of a brakeman 25 years old, in good health, earning $960 a year, with a life expectancy as shown by mortality tables of thirty-two years, is not flagrantly inadequate.

JOHN W. RAWLINGS and ROBERT HARDING for appellant.

CHAS. R. McDOWELL, CHARLES H. RHODES and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Tinsley Stewart, who was a brakeman in the service of the Louisville & Nashville Railroad Company, was killed in a wreck at Gravel Switch, Ky., and this action was brought by his personal representative to recover for his death. On the first trial of the case, there was a verdict and judgment for the plaintiff in the sum of $12,000. The defendant appealed to this court, and, on the appeal, a new trial was ordered. L. & N. R. R. Co. v. Stewart's Admx., 115 S. W. 775. On the return of the case to the circuit court, it was tried again, that trial resulting in a verdict and judgment in favor of the plaintiff for $3,500, and the plaintiff appeals. The facts of the case are fully stated in the opinion on the former appeal. A number of grounds are relied on for a reversal.

1. The court refused to permit the plaintiff to prove by G. A. Stewart that the deceased passed his house on the top of the train five miles from the place of the wreck at 11:50 a. m., and that he got the information over the telephone at 12:5 p. m. that the wreck had occurred. The court also refused to allow Mike Devers to state that he saw the wreck, went to it, and telephoned to Stewart after coming from it at 12:5. This evidence was offered to show the speed of the train in running the five miles in question. But on the former appeal it was held incompetent to show the speed of the train at the time of the accident, as the train would be controlled not by natural forces alone, but by those on it, and the question was not as to the speed of the train a mile or more away, but as to its speed at the point where the ballast had been taken out. The opinion on the former appeal is the law of the case and the admissibility of this evidence cannot be agitated further now.

The court refused to permit G. A. Stewart to testify that at the place where the track gave way the old roadbed was lower than the new that was put in. While the court did refuse to allow the plaintiff to prove this in chief, the fact was proved on cross-examination of other witnesses, and was uncontroverted. The new rails weighed 80 pounds, while the old rails weighed only 70 pounds, and there was a mass of evidence as to the condition of the track, so that if this statement by Stewart had been admitted it could have had no effect upon the trial. The jury found for the plaintiff, and also found that the defendant was negligent. The court refused to permit the plaintiff to prove by John Matlock that the section crew had been working on the track, but quit it eight days before, and had not returned until after the wreck. But all the facts were brought out on the cross-examination of the witnesses for the defendant, and there was no dispute that the section hands had not been there for eight days. The evidence of Matlock, if admitted, could have had no effect on the result. The court refused to permit Allen Minor to testify that the train at the time of the wreck was running faster than trains usually run. In making this ruling, the court followed the opinion on the former appeal. The court refused to permit Boyle Robertson to state that for a mile and a half before the train reached the place of the wreck it was running down grade. But when the defendant introduced its evidence, the plaintiff proved this fact by the engineer, conductor and fireman on cross-examination, and there was no contrary evidence given, so that the fact as to the grade of the track was clearly established before the jury. The court permitted J. F.

Burns, a witness for the defendant to testify that he went over the road three weeks after the wreck, and that the ties under the switch rails, which had not in the meantime been molested, were good. It is true that the plaintiff's theory of the wreck was that it did not begin at the switch, but where the ballast had been taken from between the ties some feet further on. On the other hand, the proof for the defendant was to the effect that the car jumped the track at the switch, and, if this was true, it was proper for the defendant to show that the ties and rails at this point were good. The proof tended to show that the accident was due to a different cause from that relied on by the plaintiff. For the same reason, it was proper for the defendant to show the condition of the track two weeks before the accident; for when the condition of the track two weeks before was shown, and the changes made in the meantime were also shown, the jury could more intelligently pass upon its reasonable sufficiency at the time of the wreck. The court did not err in allowing a number of witnesses for the railway company to state their opinions as to whether the track was reasonably sufficient, for they were qualified to speak on the subject as experts, and the question, what is a sufficient railroad track, is clearly a matter on which experts' testimony may be received. The court also did not err in allowing the witnesses for the defendant to state that they did not know the cause of the wreck. The defendant had the right to ask them, and the fact that they did not know after they had carefully examined the ground was properly admitted to go to the jury for what it was worth. The evidence given for the defendant which is now objected to is practi-

cally the same as that given for it on the former trial, and in the opinion on the former appeal none of it was condemned. That opinion is the law of the case, and matters which might have been brought to the attention of the court then, and were not, are concluded by that opinion. If errors are made on the trial against the appellee, and the case is brought here and reversed, he must call the attention of the court to the errors he wishes corrected; for the circuit court has a right to assume that matters not passed on in the opinion were correctly ruled on the trial. Were it otherwise, litigation would be interminable, and an appeal by one party would only be a stepping stone to another appeal by another.

2. Instruction 4, given by the court, and now complained of, was given on the former trial, and is set out in the opinion delivered on the former appeal. The instruction was then held correct, and although that was an appeal by the defendant, the opinion, for the reasons just stated, is equally binding upon the plaintiff.

3. In his final argument to the jury, the attorney for the defendant among other things said: "Gentlemen of the jury, I want to warn you that things have come to such a pass in this country that if a man gets his finger cut he runs to some lawyer to bring a damage suit. You are farmers and men with employes under you, and, if any injury occurs or an accident happens to any of them, you may be sued too, or you will be just as liable to be sued, too, and you had better be on your guard in regard to these damage suits." The plaintiff objected to this, and asked the court to instruct the jury to disregard it. The court responded that he could not control the illustrations used in the argument of the case by coun-

sel, and the jury would try the case according to the facts. The counsel proceeding with his argument said: "Some of you have kinsmen who are in the employment of the railroad, and for that reason you do not believe that they are all liars and perjurers." No objection was made at the time to this, but it was relied on in the motion for new trial as misconduct, and it was then also shown that one of the jurors was related by marriage to one of the defendant's counsel, that another had a brother who was in the service of the defendant, and another, two nephews who were in its service, and these facts are relied on for a new trial. Some latitude must be given counsel in the argument of cases, and we do not see that there was an abuse of discretion in the circuit judge in his ruling on the argument complained of. The fact that one of the jurors was related by marriage to one of the defendant's counsel, that another had a brother in the service of the defendant, and another two nephews, was no ground for setting aside the verdict.

4. It is insisted that the verdict for $3,500 is flagrantly against the evidence, the proof being uncontradicted that the defendant was 25 years of age, in good health and was earning at his death $960 a year. It is said that, as he had an expectation of life according to the mortality tables of 32 years, the pecuniary injury to his estate is shown to be $30,720. This court has uniformly held that in cases like this the measure of recovery is such a sum as will reasonably compensate the estate of the deceased for the destruction of his power to earn money; but it does not follow that this is to be computed by simply multiplying the earning power of the deceased at his death by his expectancy of life as shown by the life tables.

The life tables are based on the ordinary expectation of life, and are used by insurance companies, but they are not based on what are known as extrahazardous employments. The work of a brakeman on a railroad train is classed among the extrahazardous employments, and, while the life tables are competent evidence in cases like this for want of any better evidence on the subject, the extrahazardous character of the service should also be taken into consideration, for the deceased was earning $960 in an extrahazardous employment, and he might not earn so much in an employment less hazardous. The value of a piece of machinery is not to be determined by multiplying its present earning power by the length of its probable use, but the cost of maintenance must be subtracted. The value of the human machine to his estate must be determined in like manner. It must be maintained—that is, it must be fed, clothed and supplied with other necessities. What the estate would lose would be the net gain. There is no precise criterion by which this may be measured; it must necessarily be left to the discretion of the jury. In the recent case of Netter's Admr. v. Louisville R. R. Co., 121 S. W. 637, we declined to set aside a verdict for $500 for the loss of the life of a child. It is true the child had no earning power at the time she was killed. Here, the deceased had an earning power at the time he was killed; but while this simplifies the problem, there are yet many things to be taken into consideration: As he would grow older, his earning power might become less; he might not remain in the extrahazardous employment. There would be certain personal expenses which he would have to meet to earn wages. How much his estate would lose by his death in the

destruction of his power to earn money is therefore a question upon which different men might have very different opinions. He had up to this time saved only $500. While the verdict of the jury is much less than is often rendered in cases like this, it is for as large a sum as a considerable per cent. of laboring men accumulate in a lifetime, and we cannot say that the verdict is so against the evidence as to warrant us in disturbing it.

Judgment affirmed.