## Brooks v. Commonwealth.

(Decided June 7, 1911.)

### Appeal from Graves Circuit Court.

1. Homicide—Assault on Appellant on Highway—Evidence—Scintilla—Sufficiency—On the night of the homicide appellant and one Sims in going home from church were overtaken by deceased and Pitman, and deacesed demanded of appellant to take back an epithet applied to them the previous summer; this he did, but instead of being satisfied, deceased with threats of personal violence advanced to attack him. He backed away from them, but they continued to advance on him with their hands in their pockets when he drew his pistol and shot both of them, killing deceased. Pitman admitted he attacked appellant, but claimed that deceased did not, and that neither he nor deceased had a bottle. Held, we can hardly afford to say there was not a scintilla of evidence tending to show appellant's guilt, but we are not prepared to say that there should not be another trial.

2. Same—Relation of Jurors to Deceased—Ground for New Trial.—While the relation of two of the jurors to deceased may not have influenced them in the trial, this presumption should not be indulged and the fact of this relationship authorized the granting of a new trial.

WEBB & WEAKS, ROBBINS & THOMAS and O. H. BROOKS for appellant.

JAS. BREATHITT, Attorney General and THEO. B. BLAKEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Under an indictment charging him with the murder of Stanley Gibson, appellant was tried in the court below and convicted of the crime of voluntary manslaughter. Following the return of the verdict, the court by indeterminate sentence and the judgment rendered, fixed his punishment at confinement in the penitentiary not less than two nor more than twenty-one years. Appellant was refused a new trial and has appealed.

The evidence shows that ill-feeling had existed for several months between appellant and deceased and the latter's friend, Alvis Pitman. Deceased and Pitman entertained a grievance against appellant on account of

an epithet he had applied to them the summer before the homicide occurred. They had indulged in numerous threats against appellant, some of them made on the day of the homicide. Nearly all these threats had been communicated to appellant, and it is manifest from the evidence that he stood in constant fear of them and because of these threats he was armed at the time of the homicide with a pistol. The evidence further shows that appellant is a young man of exceptionally fine character and peaceable disposition; that he sought to avoid a difficulty with the deceased and Pitman and that the latter were violent in their animosity toward him and persistent in their threats to take his life, or do him bodily harm.

On the night of the homicide appellant in company with Herman Sims, a youth seventeen years of age, was going from the home of Sims' father to church at Boydsville. They were walking and after getting a short distance from the Sims residence were overtaken by deceased and Pitman who were mounted upon horses. According to the testimony of appellant and Sims, after deceased and Pitman had passed appellant a few feet they stopped their horses and demanded of appellant that he take back the epithet applied to them the previous summer; this he did, but instead of being satisfied with the retraction, deceased and Pitman dismounted from their horses and with their hands in their pockets and threats of personal violence advanced to attack him; he commanded them to desist and backed away from them, but seeing that they continued to advance upon him, he drew his pistol and shot them both. Pitman ran away, but deceased was mortally wounded and soon thereafter died.

The testimony of Pitman does not differ materially from that of appellant and Sims, except that he said appellant retracted what he had said about deceased, but refused to retract what he had said about him, and that he, because of such refusal, was advancing upon appellant; and that at that time deceased was merely holding his own and Pitman's horses by the bridles. Pitman further testified that when appellant shot him he ran away, and that the shooting of deceased occurred while he was making his escape; also that he and deceased were unarmed.

One of the grounds urged for a new trial was that the court erred in excluding from the jury the testimony of one Ned Cook. We do not think the exclusion of Cook's testimony was error. He heard detached portions of a conversation between deceased and Pitman about an hour before the killing of the former, in which they were making violent threats against some one whose name he did not at the time hear. He did not even attempt to state the substance of the conversation referred to, therefore, what he did hear was not competent as evidence in appellant's behalf.

Another ground for a new trial was the discovery of new evidence which it was clearly shown appellant did not discover and could not have discovered until after the trial. This testimony is shown by appellant's affidavit and that of W. R. Poyner appearing in the record. It is to the effect that Poyner saw deceased and Pitman about ten minutes before the killing of deceased, and about a quarter of a mile from the place of the killing; that his attention was attracted to them by a pistol shot fired by one of them and immediately thereafter he heard deceased or Pitman speak to some one in a wagon they were passing and asked if they were going to Boydsville, to which the driver of the wagon replied "yes;" whereupon, the speaker, either deceased or Pitman, said "we are going on and raise sand, and you are coming on;" that immediately after they passed the wagon the horse of deceased appeared to become frightened, and wheeled out of the road to within five feet of where affiant was standing; that deceased then reined his horse back into the road and Pitman remarked to deceased "put him in; there ain't no G—d-son of a b— we are afraid of," and Gibson said "No G—d d—n son of a b— crowds me without getting hurt," and on making this statement drew from his pocket and leveled, as if to shoot, what affiant believed to be, a pistol; that both deceased and Pitman appeared to be drunk and were reeling on their horses.

The affiant further said that at the time deceased drew whatever it was from his pocket he was twenty feet or more from affiant, and immediately thereafter he and Pitman rode on down the highway at full speed toward the place of the killing.

This testimony was both material and competent. It showed the state of mind, physical and mental condition

and reckless temper of deceased and Pitman, immediately before the homicide took place. It also tended to show that deceased or Pitman was at the time of the homicide armed with a pistol or other weapon, which would serve to corroborate the impression made upon appellant at the time he shot deceased and Pitman that they were both armed, for he testified that when they attacked him they had their hands in their pockets as if to draw weapons, and he then believed them to be armed. This testimony is not cumulative. The same facts were not made to appear by the testimony of any other witness introduced on the trial, and in connection with the many threats made by both deceased and Pitman against appellant shortly before the homicide, it would serve to show that at the time of the killing they were seeking appellant for the purpose of doing him violence and were in a condition of mind calculated to make them attempt his death or injury. For these reasons the court should have granted a new trial in order that appellant might obtain the benefit of Poyner's testimony.

It also appears in the motion and grounds for a new trial that two members of the jury were related to deceased, and to two relatives of his who were giving active assistance to the prosecution. The two jurymen in question may not in fact have been influenced by this relationship, but the court could not afford to indulge the presumption that they were not. Therefore, this ground authorized the granting of a new trial to appellant.

We are of opinion that the remarks attributed to the Commonwealth's Attorney in his argument to the jury were reprehensible, but we would not feel authorized to reverse the judgment of conviction on that ground alone. Upon a retrial, however, the circuit court should see that the Commonwealth's Attorney does not again use the same remarks in argument to the jury.

We find no reversible error in the instruction as to self-defense complained of by appellant. It substantially conforms to two or more instructions in other cases to which we have given our approval, but as the case will again be tried, the court should in lieu of the words "avoid the danger" appearing therein, substitute the words "protect himself from the danger."

Instruction A asked by appellant was properly refused by the trial court. It was evidently based upon

the opinion in the case of Oder v. Commonwealth, 80 Ky., 32, which was overruled in Reynolds v. Commonwealth, 114 Ky., 917.

We can hardly afford to say that there was not a scintilla of evidence tending to show appellant's guilt of the offense for which he was convicted. The evidence, however, was slight, but we are not prepared to say that there should not be another trial of the case.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.