## Wright v. Commonwealth.

(Decided November 13, 1913).

### Appeal from Graves Circuit Court.

1. Criminal Law—Indictment—Arson.—An indictment charging the burning of a warehouse and tobacco house belonging to G. R. Allen and W. A. Usher and occupied by B. W. Wright who was doing business for B. W. Wright and V. E. Allen, where there was but one building answering such description, and it was used by the defendant for the storage of tobacco, is not defective as stating two offenses.

2. Criminal Law—Jury—New Trial.—The fact that four of the jurors were related to a witness for the Commonwealth who was not actively assisting in the prosecution and whose testimony was not attempted to be contradicted, will not entitle accused to a new trial.

3. Criminal Law—Confession—Admissions.—Where the corpus delicti is proven, accused is not entitled to instruction based on Section 240 Criminal Code. Certain testimony held to be an admission, not a confession.

4. Criminal Law.—Evidence.—Where defendant in attempting to establish an alibi testifies he called central office of the telephone company on a certain night from his residence; and on rebuttal the telephone operator testifies that he did not do so, such testimony is substantive evidence; and not merely admitted for the purpose of impeaching defendant; and no admonition to the jury as to the purpose and effect thereof is proper.

W. J. WEBB, ROBBINS & THOMAS and B. C. SEAY for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, R. L. SMITH, Commonwealth Attorney, and M. B. HOLIFIELD for appellee.

Opinion of the Court by Judge Hannah—Affirming.

At the November Term, 1912, of the Graves Circuit Court, an indictment was returned by the grand jury of Graves County, accusing B. W. Wright, L. A. Perkins and Wood Gordon of the crime of banding themselves together for the felonious purpose of burning a warehouse and tobacco house, in pursuance of which conspiracy they did set fire to and burn and destroy a "warehouse and tobacco house," which was the property of G. R. Allen and W. A. Usher; and which was in the possession of B. W. Wright, who was doing business for himself and V. E. Allen, and upon which warehouse and tobacco house there was at the time insurance; the indictment being founded on section 1169, Kentucky Statutes, and being in separate counts, charging each of the defendants as principal and each of them as aider and abettor. Separate trials having been demanded by the defendants, appellant Wright was tried and convicted at the June term, 1913, of the Graves Circuit Court; and his motion for a new trial having been overruled, he appeals.

His first ground of complaint is that the indictment is defective. The indictment charges the burning of "a warehouse and tobacco house belonging to G. R. Allen and W. A. Usher and occupied by B. W. Wright, who was doing business for B. W. Wright and V. E. Allen." So far as this record shows there was but one building answering this description, and that is the one for the burning of which appellant was indicted. He argues that the indictment charges two separate offenses in using the words "warehouse and tobacco house;" that

he was charged with burning two separate and distinct buildings. But the language of the entire description should be considered. The building which was burned was used for the storage of tobacco. It was both a tobacco house and a warehouse. Webster defines the latter as "a storehouse for wares or goods." This was a storehouse for tobacco—a tobacco warehouse. Appellant was entitled to be informed of the nature and cause of the accusation against him; and such certainty was required in the indictment as would enable him to prepare for trial and to know exactly what he had to meet. This requirement, we think, the indictment herein conformed to in all respects. Appellant could not have been misled by the words "warehouse and tobacco house" for the same were qualified by the further description, "belonging to G. R. Allen and W. A. Usher and occupied by B. W. Wright who was doing business for B. W. Wright and V. E. Allen." Appellant knew without doubt what building he was charged with burning. He has failed to show how he was or could have been misled by this description of the building which was burned, and we are unable to understand how he could have been prejudiced thereby. Taking the indictment in its entirety, we think appellant's contention in that respect is without merit.

He also complains of the jury by which he was tried and convicted. That four of them were related to C. M. Parkhill, a prosecuting witness. In support of his motion for a new trial, appellant filed his own affidavit stating that he did not know or have notice until after the trial that said jurors were related to said Parkhill. He also filed affidavit of S. P. Albritton, who stated that one of said jurors was an uncle and three of the others were cousins to said Parkhill. In his written motion and grounds for a new trial appellant sets out that said C. M. Parkhill was a very material witness for the Commonwealth, and also took great interest in the prosecution of and bringing about the prosecution in; this case. This statement is not verified by appellant. Opposing the motion, the Commonwealth filed affidavit of said C. M. Parkhill, stating that he took no part in the selection of the said jury; that he was not in the court room when the jury was selected, or during the trial of the case, except while he was testifying as a witness; that he never mentioned the case to any juror, or at-

tempted in any way to influence any juror in the trial of the case.

Appellant relies on the case of Brooks v. Commonwealth, 144 Ky., 110, 137 S. W., 867, in support of his contention in this respect. In that case, two of the jurors were related to the deceased, with whose murder appellant was charged, and two relatives of deceased were giving active assistance to the prosecution.

In the case at bar, while it is true that C. M. Parkhill was a witness for the Commonwealth, his testimony affected none of the controverted points in issue, being principally a statement that he had, as an insurance agent, placed insurance upon the burned building to the extent of $1,000. No active participation upon his part is shown in the prosecution, nor was any of the testimony by him given, contradicted or attempted to be contradicted in any manner. In Stewart's Admr. v. L. & N., 136 Ky., 717, 125 S. W., 154, this court held that the fact that one of the jurors was related by marriage to one of defendant's counsel, that another had a brother in the service of defendant, and another two nephews in the same service, was no ground for setting aside the verdict. If any presumption of injustice arising from such relationship is to be indulged in, we think that case equally as strong, if not stronger, than this. Parkhill suffered no loss by the burning of said building. He had no interest in it, and would have to pay no part of the insurance should any be paid. It is true he testified as a witness for the Commonwealth, but mere relationship to a witness for the Commonwealth does not disqualify a juror. We think, therefore, that appellant is not entitled to a new trial on this account.

As a third ground for reversal of the judgment appealed from, appellant urges certain alleged improper language used by the Commonwealth Attorney in his concluding argument. The bill of exceptions contains quite a number of statements complained of, and while it appears that there was an exception to each of them, the record fails to show that the court was given the opportunity to rule, or that he did rule on, but two of them.

The first was as follows: "Do you think your county attorney made a mistake when he began an investigation of this case when even the bats and owls knew who done it, by taking the affidavit of Reaves when Gordon wasn't even at the time accused of this crime?" to which

defendant excepted and asked the court to say to the jury that this was a misstatemet of the evidence and that Gordon had been arrested, and had been bound over in the examining trial, which the court refused to do, and defendant excepted.

The second was: "Mr. Gordon said he was at Perkins' house at the time he and Lily Riley said he was there. Johnson said Wright went under the very shed where the wrench was. Wright said that himself." To which statement defendant excepts, and moves the court to say to the jury that said statements were not made by any of said witnesses, which the court refused to do, and defendant excepted.

There was evidence to authorize the Commonwealth's Attorney in making the latter statement. The witness, John Canady, stated that he saw appellant come out from under the shed of the barn where the hose cart was kept. Appellant stated that he went back in the shadows of this barn. And this statement of the Commonwealth's Attorney was a mere conclusion therefrom.

There was also some evidence to support the former statement; and while it does not justify the entire statement, we think the language too trivial to authorize a reversal of the case. In fact we think it was the facts admitted as competent evidence that influenced the jury in their finding, and that the substantial rights of the appellant were not prejudiced by these statements.

The record fails to show that the court was permitted to, or that he did, anything with reference to the remainder of the language complained of; and the same cannot therefore be considered by us. Objection to improper argument should be interposed at the time, and the court given an opportunity to take some action thereon. This was not done here.

Appellant further contends that the lower court erred in refusing to instruct the jury as to the weight they should give to certain testimony of the witness, Pandora Emerson. This witness testified for the Commonwealth that in her presence appellant said to one Mamie Mason that the way he got his arm burned was that Perkins (who is jointly indicted with appellant) was too long in telling him the way was clear, and when he struck the match the gasoline flared up and burned his arm. Appellant contends that under section 240, of the Criminal Code the court should have instructed the jury that such confession would not warrant a conviction unless

accompanied by other proof that such an offense had been committed. We fail to see the propriety of such an instruction. There was abundant proof of the *corpus delicti;* in fact no reasonable mind can escape the conclusion that this fire was of incendiary origin. Therefore, such instruction would not have been proper. Moreover, appellant's statement as proven by this witness was not a confession. It was a mere statement in the nature of an admission, damaging in its character; but not a confession within the meaning of said section of the Code. "Statements and declarations by the accused before or after the commission of the crime although not amounting to a confession, but from which in connection with the other evidence of the surrounding circumstances, an inference of guilt might be drawn, are admissible against him as admissions." 12 Cyc., 418; Commonwealth v. Jackson, 11 Bush, 679. This language did not amount to a confession, but it was admissible as any other fact proven in the case bearing on the guilt of appellant.

Appellant further complains of the action of the lower court in failing to admonish the jury as to the effect of certain testimony introduced by the Commonwealth in rebuttal. Appellant attempting to establish an alibi, had testified that on the night of this fire, when he discovered a tobacco warehouse other than the one he was charged with burning, was on fire, he called from his residence to the central office of the telephone company, and inquired the location of the fire, and was informed that it was the Gardner & Walker tobacco warehouse, which burned just before the one appellant is charged with burning was discovered on fire. The operator who was on duty at the telephone exchange that night was introduced by the Commonwealth in rebuttal; and she testified that appellant did not call the telephone exchange on that night and that he was given no such information at that office. Appellant contends that the purpose of this testimony was to impeach him, and that the court should have admonished the jury that such was its only purpose. Had appellant objected to this testimony or made the request of the court, it would have been proper for the court to admonish the jury that they could consider this testimony only as affecting the credibility of the defendant as a witness, if it did affect it, and for no other purpose. But no objection was made to its admission nor was any request made for

such admonition, and this omission of the court cannot. be considered by us. Moreover we do not think the jury could have considered this testimony in any other way than as bearing on the credibility of appellant as a witness, and that the failure of the court to give such admonition was not prejudicial to appellant.

On cross-examination this witness was asked:

"Q. Do you state to this jury positively that you remember each one that did call that evening?

"A. I couldn't tell exactly, but we had a lot of trouble with Mr. Wright, you know, and *   *   *"

And, when re-examined by the Commonwealth's Attorney, she was asked:

"Q. Why was it you say he didn't call and you didn't answer him?

"A. Well, we had an awful lot of trouble with Mr. Wright because he treated us girls awful bad, and of course I knew his voice."

An objection was made to this testimony, and the court overruled same, appellant excepting to the ruling of the court.

This evidence "that he had treated them badly" was not competent and when objected to by appellant the court should have excluded it from the consideration of the jury. However, it was of slight importance and not sufficiently prejudicial to authorize a reversal of the judgment appealed from. In fact, we are of the opinion that none of the evidence of this witness influenced the jury in arriving at a verdict of guilty as at the close of her testimony, counsel for appellant asked her this question:

"Q. But you will not state positively that he did not call you on that night; and didn't you so state on the other trial of this case? To which question, she answered:

"A. No, I don't know whether he did or not."

Finally, appellant insists that the proof is circumstantial and insufficient to support the verdict. However, one witness swears positively to his guilt and three others swear to statements made by him, which, if true, are conclusive of his guilt, and the circumstantial evidence given by a large number of reputable witnesses is amply sufficient to authorize a conviction. It is true that the greater part of the positive evidence connecting appellant with the crime comes from witnesses of doubtful character; but it is clearly shown that they were

persons with whom appellant associated, and with whom he was very intimate. Crimes of this nature are difficult to prove by witnesses to the fact, who are of the best character. There were three or more fires in Mayfield that same night, in different parts of the town. One of them was the dwelling house of Perkins, who is jointly indicted with appellant, which house was insured and which said Perkins admits having set fire to himself. He swears that he assisted appellant in setting fire to this warehouse. He could have no motive to burn this warehouse as he had no interest in the building or its contents, and could gain nothing by its burning. There was a strong motive on appellant's part, as he owned a half interest in the tobacco, and it was insured in the sum of five thousand dollars. It is true he swears and introduces some other evidence to show that the tobacco was of greater value than five thousand dollars. This evidence, however, is not conclusive.

It must be presumed that the jury, having had the witnesses before them and heard them testify, were capable of judging as to the effect of their testimony, and they were justified in their conclusion.

The judgment is affirmed.