## Alley et al. v. Commonwealth.

April 30, 1943.

E. J. Picklesimer and L. J. May for appellants.

Hubert Meredith, Attorney General, and Frank A Logan, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

James Alley and Joe Williams, on their joint trial, were convicted of manslaughter and each sentenced to eight years imprisonment. The appellants were deputy sheriffs of Pike County and on this occasion one of them was in uniform. In the performance of their duty, on an early Saturday evening in March, 1942, they started on a tour of beer saloons on Coburn Mountain in the

Pond Creek vicinity. They first visited that of Landon Rutherford, the father of Garland Rutherford whom they killed. He was there but nothing out of the ordinary occurred. They then went to Dock Varney's place. Rutherford and several of his friends went there also a few minutes later. While there he took a position next to Williams and "kinda shoved him over from the counter." The officers then left. Not long afterwards Rutherford went out also. They went to Grover Blackburn's beer saloon and Rutherford showed up there within a few minutes. On the way he exhibited his pistol to one of his companions. While the officers were at the bar drinking soft drinks Rutherford stood near by tapping the counter with a coin. Up to this point there is no contradiction in the evidence.

According to witnesses for the Commonwealth the defendant Alley, without saying anything, assaulted Rutherford by striking him on the head with a pistol, whereupon the shooting started. Others related that Alley preceded the assault by asking Rutherford what he was doing following them around all evening. Some of the witnesses testified the officers fired first and some of them that Rutherford did not fire a single shot. Most of these witnesses admitted varying degrees of intoxication. There was a fusillade and Rutherford was shot seven times and died as the result.

The defendants testified that when Rutherford came in the Blackburn saloon he again shoved up against Alley and said something they did not understand. Alley asked him why he was following them around and Rutherford responded, "What in the hell are you going to do about it," and put his hand on a pistol in his belt, whereupon Alley grabbed his hand. Rutherford shoved him away and tried to pull his pistol which hung in the holster. Alley struck him and Rutherford started shooting. A bullet went through the coat of one of the men, but neither of them was wounded. The defendants testified they shot in self-defense and in defense of one another. A 17 year old boy substantially corroborated the defendants. Contradictory statements were proved to have been made by several of the witnesses for the Commonwealth. The defendants proved that as Rutherford came out of Varney's place, just before going to Blackburn's saloon, he said "he was going down the hill and kill him a couple of G— d— sheriffs." But other wit-

nesses testified that Rutherford was in a good humor and did not make such statement.

A reversal of the judgment is sought on the grounds of newly discovered evidence and that one of the jurors was an uncle by marriage of the deceased's sister, which fact was unknown to the defendants when the juror qualified for service.

Upon what we deem a sufficient showing of diligence without timely discovery of the witnesses, the defendants, on their motion for a new trial, showed that Phillip Vanover would have testified to having seen the fight and to facts which would have corroborated the defendants' testimony. While this is cumulative to a considerable extent and in itself hardly sufficient to have authorized a new trial, the prospective witness also swore that on that night he heard Rutherford say ''he had bought him a new .38 special and the G— d— officers better stay off Coburn Mountain because they had ruined his daddy's business, and they had run his two women off that his daddy had keeping up there for the purpose of dating men and that his daddy was averaging $15 every weekend off of the rooms these women occupied.'' The affiant further related that he had kept his knowledge of these things concealed because he did not want to be a witness on the trial. Clifford Tinhill made an affidavit of a similar statement upon a different occasion. A. P. Morris deposed that about a week before the killing, the deceased had invited him and some friends to join him at ''Wild Cat Inn on Coburn Mountain,'' where the places described are situated, and added: ''We will have a good time. I have bought me a new .38 special and the G— d— fellows or the law, one of the two I forget which way he spoke it, had better lay off him.'' This witness was unable to attend the trial because of injuries received in an accident.

It has been often repeated that newly discovered evidence as a ground for a new trial is to be guarded against and received with caution, and that such late disclosures must have been of materiality and such character as persuades the court that they would probably have been decisive of the case. Here the defendants, as officers, were in the midst of friends and relatives of the deceased, and some of them had testified against them in an extreme way. The homicide occurred in the performance of the defendants' official duties, and it is diffi-

cult to conceive from the evidence any personal motive or provocation for assaulting the deceased. Other than slight evidence that the deceased was intoxicated there was an absence of motive on his part to have attacked the officers or precipitated the fight in the manner which they describe. The newly discovered evidence supplied that motive. It likewise revealed more clearly the state of mind of the deceased and supported the defendants' testimony that he was the aggressor. Brooks v. Commonwealth, 144 Ky. 107, 137 S. W. 867. In the circumstances we are of opinion that the newly discovered evidence is of such materiality and character that it justifies the granting the defendants a new trial. Johnson v. Commonwealth, 188 Ky. 391, 222 S. W. 106.

It is not necessary to consider the ground of relationship of the juror to the deceased.

The judgment is reversed.