## Bingham v. Commonwealth.

(Decided March 25, 1919.)

Appeal from Pike Circuit Court.

1. Homicide—Voluntary Manslaughter—Plea in Bar.—Where one of two persons, jointly indicted for the crime of willful murder, is found guilty of voluntary manslaughter, the other defendant can not plead that judgment in bar of the right of the Commonwealth to try him for murder, even though the one first convicted fired the fatal shot and the second defendant was only present aiding and abetting.

2. Homicide—Manslaughter.—Where two persons are jointly indicted for the crime of willful murder, one may be guilty of murder and the other of manslaughter only. If the one who fires the shot which causes the death acted in sudden heat of passion or in sudden affray and without previous malice, he will be guilty of manslaughter only, while the other who did not fire a shot but was present, aiding, encouraging and abetting the crime, will be guilty of willful murder, if he acted with malice aforethought.

3. Criminal Law—Evidence.—Where there is evidence for the Commonwealth sufficient to warrant the verdict of the jury, it will be sustained notwithstanding the evidence for the defendant is in conflict therewith, the jury being the judges of the facts.

J. J. MOORE and W. K. STEELE for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Sampson—Affirming.

The grand jury of Pike county returned an indictment in February, 1918, accusing Mosco Belcher and E. S. Bingham of the willful murder of Nelson Matney.

Shortly thereafter Bingham moved for a severance of trial, which was granted, and the Commonwealth elected to try Belcher first. At the spring term, 1918, Belcher was put upon trial and the jury returned a verdict finding him guilty of manslaughter and fixing his punishment at confinement in the state penitentiary for twenty-one years. Judgment was entered thereon, from which Belcher appealed to this court, and that judgment was affirmed. Belcher v. Commonwealth, 181 Ky. 516. At the September term of court appellant Bingham was placed upon trial and the jury returned a verdict finding him guilty of voluntary manslaughter and fixing his punishment at fourteen years in the state penitentiary. Motion and grounds for new trial were filed and overruled, judgment entered and appeal granted to Bingham.

Appellant asks a reversal upon two grounds only: (1) The court erred in its instructions to the jury in that it submitted to the jury the question of the guilt of appellant of the crime of willful murder, whereas, appellant asserts it had been judicially determined in the Belcher case that the principal, Belcher, was guilty only of voluntary manslaughter, and Bingham being only an aider and abettor could not therefore have been guilty of any crime greater than voluntary manslaughter, if anything. (2) The evidence was not sufficient to warrant the court in submitting the case to the jury and the court should have sustained appellant's motion for a directed verdict in his favor at the conclusion of the evidence.

In the opinion in the Belcher case the facts are admirably set forth, and we will but briefly recite them so as to enable one to better understand the application of the principles of law which we conceive to control this case.

The homicide occurred on Sunday, December 16, 1917, at the home of the deceased in Pike county; appellant Bingham and the deceased Matney were brothers-in-law, but they had quarrelled some years before and were not friendly at the time of the killing, nor had they been for several years. Belcher had been paying attention to Jane Matney, the nineteen year old daughter of the deceased, and Matney objected to this and had threatened to run Belcher off if he came to his house again. This had been communicated to Belcher by Jane, and Belcher had not been to Matney's house for two months next

before the killing. Both Belcher and Bingham were un-friendly to Matney, but Bingham and Belcher were intimate friends. On the afternoon of the Sunday on which Matney came to his death, Bingham and Belcher met by appointment on the road near Slone's store; they claim to have transacted some slight business between them. Thereafter they went to the store operated by Slone where they met several other persons. The store was open and they bought four or five bottles of "hot drops," which they mixed with cider and whiskey and drank. They became more or less intoxicated and were dancing in the store; Bingham and Belcher used expressions between themselves, indicating that they had some secret expedition on hands, the exact meaning of the words being unknown to the other persons in the store. Matney lived a short distance down the river from the store, and Bingham and Belcher spoke of their destination as being down the river. About dark Bingham and Belcher and another man left the store and started down the road; after going only a short distance a pistol shot was heard which came from the three in the road, but appellant Bingham claims not to know who fired the shot, although he admits it was fired by one of his companions. The third man returned to the store, but Bingham and Belcher proceeded down the road. They contend that they had started to the home of Belcher to have supper; but when they reached the forks of the road they turned in the direction of the home of Matney instead of towards Belcher's home. Each knew that he was not welcome at Matney's home, and that Matney did not like them and they did not like him. In approaching the home of Matney they passed the barn where Matney was milking his cow. Without stopping with him they went immediately to the house; entering the front door, Belcher walked into the kitchen where his sweetheart, Jane, was cooking supper. Bingham, according to Bert Matney, the twelve year old son of the deceased, stopped in the front room by the dresser and said to Bert, "Your pa don't want me here, does he?" Very soon after Belcher reached the kitchen and began a conversation with Jane, Nelson Matney walked in and asked Belcher what business he had there, to which Belcher answered, "I have a little," whereupon Matney ordered Belcher to leave the house, and Belcher said he would go out when he got ready. Bingham was in the front room and

within hearing of Matney and Belcher at the time; Matney turned and came into the hall to get his shotgun, and Belcher seeing this, went out at the kitchen door and around the house towards the front gate; about the same time Bingham left the front room and went towards the front gate, where he met Belcher; Matney came around to the gate with the shotgun in his hands; he and Bingham began to quarrel and to call each other bad names; in the meanwhile Belcher had crossed the road, gaining the elevation beyond, and was some 130 to 150 feet away; while Bingham and Matney were cursing and quarreling, Bingham called Matney "a son-of-a-bitch," whereupon Matney told Bingham not to call him that again, or dared him to call him that again; about this time Belcher fired two shots from a pistol at Matney, who was inside his yard fence. Bingham, who was standing just on the outside of the fence near the gate, continued to quarrel with Matney, and an instant later a third shot was fired by Belcher which struck Matney's vitals and he turned towards the house and fell across his gun, dead. Both Bingham and Belcher left the scene immediately, although no one was there to take care of the dead man except his nineteen year old daughter and twelve year old son. The daughter remained with the body while the little boy ran for help. Bingham and Belcher fled into Virginia, where they were afterwards arrested and returned to Kentucky for trial.

One witness testified that only a few days before the killing Bingham had said that Matney was a hard man to get along with; that he had had a quarrel with him some four or five years before and that if he had had a gun at that time he would have killed Matney, and that it was not yet too late. Another witness gave evidence that Bingham had recently attempted to borrow a pistol, and there were several witnesses who gave testimony to the effect that Bingham disliked, if he did not hate, Matney. Bingham had not been to the home of Matney for about two years, and then Matney was not at home. According to some of the witnesses they frequently met and passed without speaking. The theory of the Commonwealth is, that after Belcher and Bingham met on the afternoon before the killing, they entered into an agreement or conspiracy, either expressly or tacitly, to intimidate and alarm their common enemy, Matney, and after nerving themselves for the job by

drinking a concoction of whiskey, cider and "hot drops," proceeded with the execution of their design.

Appellant's contention is that he was an innocent bystander, wholly unconnected with any plan or conspiracy to injure or bring about the death of Matney, and that he did not anticipate any trouble on his visit to the home of Matney; that the shots by Belcher were fired in sudden heat of passion without previous design even, on Belcher's part, and that he (Bingham) had no opportunity to prevent Belcher from firing the shots.

(1) Instruction "A," given by the court, defines the words "willful," "malice aforethought," "felonious" and "feloniously," as used in the instructions, and there is no objection to the form or substance of the definitions, but only that a definition of "murder" and "malice aforethought" was not relevant to the facts of this case, especially since Belcher, whom appellant asserts was the principal if not the sole perpetrator of the crime, had been judicially determined to be guilty only of voluntary manslaughter. Instruction "B" directed the jury to find the defendant guilty of willful murder, if it believed from the evidence beyond a reasonable doubt that the defendant, Belcher, willfully and feloniously shot and killed Matney at a time when it was not necessary in order to protect himself or Bingham from death or the infliction of some serious bodily harm, and that Bingham was then and there present and near enough to and did unlawfully, willfully, feloniously and with malice aforethought, aid, assist, abet, encourage, advise, counsel or command Belcher to so shoot and kill Matney. The same instruction told the jury that if it believed from the evidence, beyond a reasonable doubt, that defendant Belcher shot and killed Matney in sudden heat of passion or sudden affray and without previous malice, and that Bingham was present and near enough to and did unlawfully, willfully and feloniously aid, assist, encourage, advise, counsel or command Belcher to so shoot and kill Matney, the jury should find the defendant Bingham guilty of the crime of voluntary manslaughter, and fix his punishment at confinement in the penitentiary not less than two nor more than twenty-one years.

Appellant insists that as he is not charged with firing the shot or striking the blow which killed Matney, he could, therefore, be only an aider and abettor in the

crime, if anything, and as Belcher had previously been tried and found guilty of voluntary manslaughter only, the aider and abettor could not be guilty of a greater crime, and, consequently, the instruction directing the jury to find the appellant guilty of murder if it believed certain facts to exist, was palpably erroneous.

Had the jury found defendant guilty of murder there might have been some basis for this contention, if the facts had only justified a verdict of voluntary manslaughter, but since the verdict is only for manslaughter, and not under the instruction on murder, appellant's insistence is without force because the error, if it had been such, was not prejudicial, the jury having disregarded the instruction upon murder.

It is a well-settled principle that an aider and abettor may be guilty of willful murder, while the one who fires the shot or strikes the blow which takes the life, may be guilty only of manslaughter. If Bingham secretly designed to bring about the death of Matney, and in furtherance of his plan induced Belcher to accompany him to the Matney home on the occasion of the homicide and thus provoked and brought about the difficulty, which he further fomented by remaining at Matney's gate and quarreling and abusing him until Belcher, who had run off some distance, was so encouraged and abetted that he began to fire at Matney, and Matney's death resulted directly from the designing aid and encouragement of Bingham, though Belcher acted in sudden heat of passion, Bingham would be guilty of willful murder though Belcher was guilty only of voluntary manslaughter. Parker v. Commonwealth, 180 Ky. 102; Mickey v. Commonwealth, 9 Bush 596; Dorsey v. Commonwealth, 17 S. W. 183; Arnold v. Commonwealth, 55 S. W. 894.

This is not a new principle, but was anciently stated as follows: "If several persons are present at the death of a man, they may be guilty of different degrees of homicide, as one of murder and another of manslaughter; for if there be no malice in the party striking, and malice in the abettor, it will be murder in the latter though only manslaughter in the former."

We, therefore, conclude that the court properly instructed the jury upon the law of murder.

(2) Equally without merit is the contention of appellant that the evidence does not sustain the verdict

of the jury and judgment of the court. Of course, the evidence offered on behalf of appellant does not sustain the verdict, and if the jury had considered it entitled to credibility, no doubt the appellant would not have received so severe a punishment. The evidence for the Commonwealth was sufficient to justify the jury in believing beyond a reasonable doubt that Bingham's heart rankled with hatred for Matney and that he designedly went with his confederate Belcher to the home of their common enemy for the purpose of precipitating trouble. The jury was the trier of the facts. It had the right to reject the evidence of appellant and to accept that of the Commonwealth as true. Had it accepted the evidence offered by appellant as true, it would have reached a different conclusion, and defendant no doubt would have been acquitted of the charge. There was a conflict in the evidence and this was correctly submitted to the jury. The trial court, therefore, properly overruled the motion of appellant for a peremptory instruction.

It is insisted by appellant that all the evidence concerning what took place between appellant and Belcher and other persons at Slone's store immediately before the killing, as well as what was said and done by Bingham at the house of Matney before the difficulty was incompetent upon this trial, and should have been excluded. No good reason can be advanced for such a ruling. It may be that Belcher escaped the just penalties of the law, but it does not follow that Bingham, who beyond question incited the difficulty, and encouraged the firing of the shots, should profit by it. Counsel for appellant insists that he is a victim of circumstances— yes, circumstances which he fathered. The enmity which he bore his brother-in-law found friendly companionship in the hate of Belcher for Matney, and when these hostile spirits were incited and energized by the concoction of whiskey, cider and hot drops, both Belcher and Bingham, who, when separate, and not incited, secretly nursed their wrath, were emboldened to visit the home of Matney to insult and humiliate him if not to do him bodily harm. Whatever was their mission to the house of Matney, it can not be doubted that it was unfriendly to him, and while they may not have planned his death, they did purpose to defy his will, overcome his home discipline and to humiliate him; and if while in the execution of this unholy plan Matney was killed, appellant is in no posi-

tion to complain that the original design was less than murder.

Some slight errors occurred upon the trial by the introduction of incompetent evidence of which appellant complains, but after carefully examining the record with respect to each of the complaints, we are persuaded that his substantial rights were not prejudiced thereby.

The court is of opinion that the facts fully justify the conclusion of the jury, and there appearing no error to the prejudice of the rights of appellant, the judgment is affirmed.