## Decker v. Commonwealth.

(Decided May 30, 1922.)

### Appeal from Grayson Circuit Court.

1. Homicide—Instructions.—An instruction defectively defining murder was not prejudicial to any substantial right of the accused

and cannot, on appeal, be complained of by him, where he was convicted only of voluntary manslaughter upon evidence and under a proper instruction authorizing his conviction for that offense.

2. Homicide—Threats—Evidence.—Where certain statements and threats made by the accused about the deceased shortly before the homicide and when he was trying to procure a gun, were proved by the testimony of witnesses introduced by the Commonwealth in rebuttal, the failure of the trial court to admonish the jury that such testimony should be considered by them only for the purpose of contradicting the accused or discrediting him as a witness, was not error. The testimony in question being of substantive character, was competent as conducing to prove a motive on the part of the accused for the killing of deceased and that it was done with malice aforethought; and as for this purpose, as well as the other mentioned, it should have gone to the jury, they properly were allowed to consider it for both purposes.

3. Criminal Law—Evidence—Discretion—Presumptions.—While such substantive evidence should be introduced in chief, it is for the trial court to determine, in the exercise of a sound discretion, in what state of case, if at all, its admission in rebuttal should be allowed; and where, as in this case, there is no reason apparent for declaring that its admission by the trial court in rebuttal was an abuse of its discretion, the presumption will not be indulged that such ruling of the court was prejudicial to any substantial right of the accused.

HAYNES CARTER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Upon his trial in the Grayson circuit court under an indictment charging him with the crime of murder, the appellant, Riley Decker, was convicted of voluntary manslaughter and his punishment fixed by verdict of the jury and judgment of the court at confinement in the penitentiary thirteen years and six months. Complaining of the verdict, judgment and refusal of the circuit court to grant him a new trial, he has appealed.

The victim of the homicide was Aaron Scott, who was shot and killed by bullets from an automatic pistol fired at him by the appellant. The killing occurred at Willigan's store, in Grayson county, about five o'clock p. m. Sunday, June 12, 1921, and was the culmination of a difficulty between the parties which began about noon of the same day at the home of Jim Carroll, a cousin of the appellant, with whom the latter, deceased, his sons, Lonnie

and Andy Scott, George Meredith and Sherman Cook dined that day. The deceased or some one of the company present had in his possession a bottle of whiskey from which each member of the party took one or more drinks before going to the table. During the meal appellant made a remark expressive of doubt as to the legitimacy of Carroll's birth, at which the deceased, as a friend of the latter, took offense, which he manifested by drawing his knife and threatening to attack appellant. The altercation thus commenced ended at the table with an apology from the appellant to the effect that the offensive remark about Carroll was jestingly made by him, but was later mutually renewed by the deceased and appellant in the yard without an actual collision between them. From Carroll's residence all the parties went to Ashley's store near Carroll's residence and opposite the store of Willigan, where deceased and appellant again quarreled, each threatening the other and drawing his knife. This quarrel was abruptly closed by appellant's getting upon his horse and riding away, but saying to the deceased and his sons before leaving: "You fellows stay here twenty-five minutes until I get back with my gun." He then rode to the nearby homes of Jim Carroll, Jack Downs and Tol Willis, asking at each for a gun, finally securing at Willis' a double-barreled shot gun, which in returning to Ashley's store he, for want of cartridges, cast aside. Upon getting near the Ashley store appellant again said to the deceased and his sons, Andy and Lonnie: "If there are any of you sons-of-bitches here when I come back you will die before sundown." Following this statement he again rode away, going first back to Carroll's, thence to the home of Ed Cushenberry, and on once more returning to Ashley's store stopped for some minutes at a buggy where George Meredith and Sherman Cook were. On one of these trips he evidently obtained the pistol with which he shot and killed Scott. During the last absence of the appellant the deceased and his sons, Andy and Lonnie, left the store of Ashley and walked across the road to the store of Willigan, on the porch of which they were sitting when appellant made his final return immediately preceding the killing of deceased. There was little, if any, contrariety of evidence regarding the facts preceding the homicide thus far stated, but as to the facts then and subsequently occurring much of the evidence was conflicting.

Appellant's arrival at Willigan's store, the place of the killing, was preceded by the arrival there of his son, Dewey Decker, and his brother, Lonnie Decker. According to the witnesses for the Commonwealth when appellant rode up to the store he stopped about fifteen feet from the deceased, dismounted from his horse and hitched the animal to the corner of the fence, immediately went to the deceased, pulled the latter's hat down on his face and then threw it on the ground, saying at the time that he wished or was willing to fight the deceased and his two sons a fair fight. The deceased picked up his hat from the ground where it had been thrown by appellant, replaced it upon his head and in reply to the latter's challenge to fight him and his sons said: "We don't want no fight around here, Riley." Following this reply the appellant stepped on the porch of Willigan's store and near the store door, and at once began shooting at deceased, who at the time was standing with his back toward appellant leaning upon a stick which he had carried in his hand from Ashley's store. There were three shots from the appellant's pistol; the first entered the back of the deceased and a second his left side, one or both causing his immediate death. When the appellant began shooting, Lonnie Scott, who was standing with a pistol in his hand near his father and facing appellant, opened fire on the latter, shot at him five times, and inflicted upon his person three wounds, one of them a slight wound in the breast from a bullet deflected by a watch in the appellant's pocket, which it first struck, the other two being from the entrance of two bullets in the right leg. The appellant was confined to his bed for some time by his wounds, but recovered from them before his trial.

It was the theory of the appellant, supported by his testimony and that of some of the eye-witnesses present, mainly his son and brother, that before he did any shooting he was shot by Lonnie Scott, son of Aaron Scott, in returning whose continuing shots he (the appellant) accidentally shot and killed the father, who was standing behind Lonnie and in the way of the bullets from the appellant's pistol. The jury, however, after due consideration of all the evidence, found the appellant guilty of voluntary manslaughter, as previously stated, thereby rejecting his contention that the killing of Aaron Scott resulted accidentally from his lawful exercise of the right of self-defense in shooting at Lonnie Scott, and to this verdict of the jury the appellant must submit, unless the

record brought to this court by his appeal discloses the commission of some error by the circuit court so prejudicial to his substantial rights as prevented him from receiving a fair trial therein.

The appellant's first complaint is that the trial court erred in failing to admonish the jury that certain evidence introduced by the Commonwealth in rebuttal should be considered by them only for the purpose of contradicting or impeaching the appellant.

The evidence referred to was furnished in part by the testimony of Mrs. Ashley, wife of Marion Ashley, and Mrs. Willis, wife of Tol Willis. On his cross-examination the appellant admitted that after he and the deceased renewed their quarrel at Ashley's store, he rode to the homes of Jim Carroll, Jack Downs and Tol Willis for the purpose of procuring a shotgun, and at the home of Willis obtained such a gun, which he laid aside upon returning to Ashley's store. Appellant denied, however, that he made to Mrs. Willis and Mrs. Ashley at the Willis home threats at to what he would do to deceased and his sons with the gun when he returned to them at the Ashley store; and while admitting that Mrs. Ashley got the gun and tried to persuade him not to take it, and that he took it from her hands, denied that he forcibly took it from her. Upon being introduced Mrs. Ashley and Mrs. Willis contradicted appellant, both testifying as to the threats made by him against the deceased and his sons when he got the gun, also as to Mrs. Ashley trying to prevent him from getting the gun and his forcibly taking it from her and carrying it off. It appears from the bill of evidence that some of the questions asked these two witnesses and the answers thereto were objected to by appellant's counsel, the objections being sustained by the court and the answers excluded, but such of their testimony as is stated above was admitted by the court. It does not appear from the record, however, that appellant's counsel advised the court of the grounds of such objection as they made to the evidence in question, or that they requested the court to admonish the jury that it could be considered by them only for the purpose of contradicting or discrediting the appellant as a witness. In view of the situation thus presented by the record the rule in Wright v. Commonwealth, 155 Ky. 750, and Renaker v. Commonwealth, 172 Ky. 714, would seem to apply, which substantially declares that in order to permit an appellant to take advantage on appeal of error committed by the trial court

in failing to admonish the jury to consider testimony only for a certain purpose, it must be made to appear from the record that the attention of the trial court was called at the time to the necessity for such admonition or the court requested to give it, neither of which was done here. In addition to what has been said, the testimony of Mrs. Ashley and Mrs. Willis was competent as substantive evidence of probative effect, as it tended to prove the motive of the appellant for the killing for which he was indicted and tried and the malice with which it was done. Hence it would have been improper for the trial court, even if requested so to do, to have admonished the jury to consider it only for the purpose of determining whether it contradicted or discredited the appellant as a witness.

It was not necessary to lay a foundation for the introduction of the evidence by first asking the appellant, on cross-examination, if he made the threat or performed the acts to which Mrs. Ashley and Mrs. Willis testified. Being of a substantive character and therefore evidence in chief, it should have been introduced by the Commonwealth before closing its evidence in chief, instead of in rebuttal. But the fact that it was introduced in rebuttal did not destroy its probative effect as substantive evidence, or authorize the court to confine the jury to its consideration as affecting the credibility of the appellant as a witness. The court in the exercise of its discretion might have excluded it upon the ground that it should have been introduced as evidence in chief, but as this was not done, and its introduction was not objected to on that ground, we are not disposed to hold that its admission was an abuse of the court's discretion.

What has been said of the testimony of Mrs. Ashley and Mrs. Willis is equally true of that of Mrs. Bettie Newton, Chattie Decker, Martha Decker and Rush Wilcox, the testimony of each of whom was of the same substantive character, because conducing to show by the appellant's own admissions the motive which animated him in the killing of the deceased. So for the reasons stated with respect to the testimony of Mrs. Ashley and Mrs. Willis, we are unable to say that the admission of their testimony, though it should have been introduced in chief, was an abuse of the trial court's discretion. Our examination of the evidence, other than that already discussed, affords us no cause for holding that appellant was prejudiced in any substantial right by any ruling of the

trial court regarding it, whether in its admission or re-
jection.

The appellant's final contention is that the court erred
in instructing the jury. Criticism is made of instruction
Nos. 1 and 2; the first was intended to advise the jury of
the law as to the crime of murder, and the second to state
the law of self-defense with respect to the instruction on
murder alone. It is objected that the first instruction
fails to contain the words "in his necessary, or to him ap-
parently necessary, self-defense," and that the second
incorrectly states the law of self-defense. Conceding,
however, that instruction 1 is defective in the particular
claimed, the error is harmless, as the appellant was not
convicted of murder, but of voluntary manslaughter un-
der an instruction defining that crime, which is not com-
plained of by him as containing the defect appearing in
instruction No. 1. In numerous cases we have held that
an instruction defectively defining murder cannot, on
appeal, be complained of by the accused, where he was
convicted only of voluntary manslaughter under an in-
struction or instructions authorizing his conviction for
that offense. Curtis v. Commonwealth, 169 Ky. 727;
McGehee v. Commonwealth, 181 Ky. 422; Bingham v.
Commonwealth, 183 Ky. 688. We will also concede that
instruction No. 2 incorrectly states the law of self-defense
as claimed by appellant, but, as previously said, it was
intended to apply alone to instruction No. 1, defining mur-
der. This, however, was not the only instruction given
by the court on the law of self-defense, for following the
instruction respecting voluntary manslaughter was an-
other on self-defense, number 8, which correctly gave the
law in the following language:

"If you should believe from the evidence that at the
time the defendant, Riley Decker, shot Aaron Scott, if he
did so, he believed and had reasonable grounds to believe
that he was then and there in danger of death or the in-
fliction of great bodily harm at the hands of Aaron Scott
or Lonnie Scott, or that it was necessary or believed by
the defendant, Riley Decker, in the exercise of a reason-
able judgment to be necessary to shoot at the one or the
other of them, if he did shoot at either, in order to avert
the danger, real or apparent, to him from either of them,
you should acquit the defendant on the grounds of self-
defense and apparent necessity."

Obviously, this instruction destroyed any prejudicial
effect that instruction No. 2 might otherwise have had

upon the substantial rights of the appellant and with the other instructions, exclusive of 1 and 2, correctly and fairly gave the jury the whole law of the case in respect to the crime of which he was convicted, viz.: voluntary manslaughter. McGehee v. Commonwealth, 181 Ky. 422; Winburn v. Commonwealth, 181 Ky. 183.

The record shows no cause for disturbing the verdict of the jury, which was abundantly supported by the evidence.

Judgment affirmed.