# Howard v. Commonwealth.

(Decided Jan. 13, 1933.)

FORESTER & SMITH and J. H. TAYLOR for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Nathan Howard was indicted in the Harlan circuit court for the willful murder of Henderson Ramsey. On the trial of the case he was found guilty of voluntary manslaughter and his punishment fixed at fifteen years' imprisonment. He appeals.

The proof for the commonwealth showed these facts: Walter Taylor, who operated a store on Puckett's Creek, on January 7, 1932, called R. C. Mullins, a justice of the peace, over the telephone and told him that Bennie Howard was at his store and disorderly and asked him to come up and have him arrested. The magistrate took Henderson Ramsey, the deputy sheriff, with him and Robert Mullins, the constable, who summoned several other men to go with them. When they reached the store, Walter Taylor swore out a warrant for the arrest of Bennie Howard. Two warrants were issued and placed in the hands of the officers, who went up to the sawmill, about a quarter of a mile above the store and there arrested Bennie Howard. After they left the store, Nathan Howard, who was twenty years old and a brother of Bennie, came to the store and learned what had happened. He then bought cartridges for his pistol which he had with him, loaded it, and started up the creek in the direction of the sawmill, de-

claring, "When they are running into me they are running into hell." He was drinking, and as he went up the creek he met the deputy sheriff, Henderson Ramsey, and Virgil Collins, whom the sheriff had summoned to go with him. The sheriff had on his badge and had been in the neighborhood before as deputy sheriff. Collins was about twenty feet behind Ramsey, and was rolling a cigarette. When they met, Henderson Ramsey called for Nathan Howard's gun. Howard had a gun stuck in his belt in front. Howard grabbed the gun, and Ramsey grabbed his arm and said, "Don't do that." Howard got the pistol out and shot Ramsey in the chest. Ramsey died immediately. Howard then turned the gun on Collins and shot at Collins, but missed him. Other members of the party by that time came up, and some shots were fired at Howard as he ran off down the creek, but he was not hit. He went down to Taylor's store and there surrendered himself to the officers. Ramsey had received information that Nathan Howard was drunk and was on the outlook for him to arrest him for drunkenness, and as he came up the road he was staggering when Ramsey approached him. Ramsey had no pistol in his hand, and after the shooting his pistol was found in the belt with all the loads in it.

The proof for the defendant was that he was not drunk and had not drunk anything; that he went to Taylor's store on business; that he did not know Ramsey, did not know that he was an officer, and did not see his badge, and that as he approached and Howard went to pass him Ramsey jumped in front of him, grabbed him on the side with his right hand, knocking the breath out of him, bruising his side, and tearing his shirt; that Ramsey said nothing, but threw his pistol in his breast, and he knocked it off with his left hand and got his pistol in his right hand and fired two shots at Ramsey. The defendant also denied that he made the threats when he left the store, and showed that he was simply on his way home when he met Ramsey and Collins.

The chief complaint on the appeal is that the court failed properly to instruct the jury. By the first clause of instruction No. 1, the court told the jury that Ramsey was a deputy sheriff, and defined his duties, and also told them that being drunk upon a public highway was a misdemeanor, that Ramsey had a right to arrest

for the offense if committed in his presence, and defined the duties of Howard under the facts shown. Instructions Nos. 3 and 4 were the usual instructions on reasonable doubt. Instruction No. 5 defined the words "malice aforethought, willful and felioniously," and there is no complaint of any of these instructions. The remainder of the instructions of the court to the jury are in these words:

"1. If you believe from the evidence in this case beyond a reasonable doubt, that in Harlan County and before the finding of the indictment herein, the defendant was drunk or intoxicated on a public highway in Harlan County, in the presence of the deceased, and that Henderson Ramsey, the deceased, either arrested or undertook to arrest the defendant for that offense, and while the defendant was under arrest, or while the deceased was endeavoring to arrest him, the defendant for the purpose of breaking the arrest or for the purpose of preventing its accomplishment, willfully and knowingly shot and killed the deceased, with a pistol, knowing at the time the deceased was a peace officer, and the reason the deceased was arresting or attempting to arrest him, then you will find the defendant guilty of willful murder and fix his punishment at death or confinement in the State Reformatory during his natural life, in your discretion, according to the proof.

"2. If you believe from the evidence that the deceased, in arresting or attempting to arrest the defendant, used greater force than he reasonably believed at the time to be necessary for that purpose and that the defendant in sudden heat and passion or in sudden affray, caused by same, shot and killed the deceased, with a pistol, then you will find the defendant guilty of voluntary manslaughter included in the indictment herein, and fix his punishment at confinement in the State Reformatory for a period of not less than two years nor more than twenty-one years, in your discretion; or if you believe from the evidence beyond a reasonable doubt that the defendant has been proven guilty, as set out in Instruction No. 1, but shall believe from the evidence that the defendant did not know at the time he killed Henderson Ramsey

that he was a peace officer of any kind, then in this event you will find the defendant guilty of voluntary manslaughter and fix him punishment as set out above.

"4. Although you may believe from the evidence beyond a reasonable doubt that the defendant was drunk or intoxicated on a public highway at the time of the killing, in the presence of the deceased, Henderson Ramsey, in Harlan County, and that the defendant shot and killed the deceased while the deceased had the defendant under arrest, or was endeavoring to arrest the defendant for that offense, yet if you further believe from the evidence that while the deceased had him under arrest, or was endeavoring to arrest him, the defendant neither forcibly resisted the attempt to arrest nor forcibly endeavored to break the arrest, and that the deceased began the attack on the defendant, by assaulting him with his hands and a pistol, from which the defendant believed and had reasonable grounds to believe that he was then and there in immediate danger of death or some great bodily harm at the hands of the deceased, and that it was necessary or was believed by the defendant, in the exercise of reasonable judgment, to be necessary to shoot and kill the deceased in order to avert that danger, real or to the defendant apparent, then you will acquit the defendant on the grounds of self-defense or the apparent necessity therefor."

Appellant insists that the instructions are erroneous because:

"(1) Voluntary manslaughter is not properly defined. (2) What is intended for a manslaughter instruction, does not use the term, wilifully, maliciously, intentional or feloniously, nor their equivalent. (3) The court erred in assuming that the defendant was drunk at the time of the difficulty. (4) The court erred in assuming that deceased was acting as an officer at the time of his death. (5) The court gave undue prominence to the fact that the deceased was an officer. (6) The court erred in giving an officer's instruction. (7) No instruction was given on defendant's rights if he was not intoxicated at the time of the difficulty."

Section 353 of the Criminal Code of Practice regu-

lating appeals to this court in criminal cases provides:

"The judgment shall be reversed for any errors of law (appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby)."

Objections 1 and 2 to instruction No. 2 are clearly without merit. Instruction No. 2 is only a modification of instruction No. 1, and the words "willfully or knowingly" are used in instruction 1. Instruction 2 is practically copied from the instruction given in Quinn v. Com. (Ky.) 63 S. W. 792, 23 Ky. Law Rep. 1302, and there approved. See, also, Hobson, etc., on Instructions, p. 915. The failure to use again the words "willfully or knowingly" in the instruction could not possibly have prejudiced the defendant in this case, for he testified himself that he willfully and knowingly shot the deceased because the deceased was attacking him with a pistol. There was no question of misadventure or other defense in the case. See Stout v. Com., 123 Ky. 184, 185, 94 S. W. 15, 29 Ky. Law Rep. 627, 13 Ann. Cas. 547.

Objections 3, 4, 5, and 6 are clearly also unsubstantial. The court did not assume that the appellant was drunk, but this question was fully submitted to the jury by instruction 1, and all the instructions must be read together. Instruction 2 is only a modification of 1. There was no dispute that the deceased was a deputy sheriff, and his badge was found on his coat after he was shot. The evidence was undisputed that he had received evidence that appellant was drunk and had gone out for the purpose of arresting him. There was no other evidence of any motive of the deceased or any reason for his action, and what occurred at the time is also to the same effect. The fact that the deceased was an officer was properly given in evidence, and the question whether the appellant knew that he was an officer was properly submitted to the jury. This was all that the defendant was entitled to, and clearly no substantial right of his was prejudiced by the wording of the instruction, under the facts of this case.

Instruction 4 was in no manner prejudicial to the appellant. By it his real defense, and the only defense shown by his evidence, was fairly submitted to the jury. He testified that the officer assaulted him with a pistol

which fired when he knocked it off, and that he then drew his pistol and shot the officer in self-defense. By the instruction the jury were told that, if they believed from the evidence that while the deceased had him under arrest or was endeavoring to arrest him, the deceased began the attack on appellant by assaulting him with his hand and pistol, from which the appellant believed and had reasonable grounds to believe that he was then and there in immediate danger of death, or some great bodily harm at the hands of the deceased, and that it was necessary or was believed by him to be necessary to shoot and kill the deceased in order to avert the danger, real or to the appellant apparent, they would acquit him on the ground of self-defense. This instruction aptly submitted to the jury the only defense which the appellant presented in the case, and no substantial right of the defendant was prejudiced by the form of the instruction under the evidence.

The seventh objection is equally unsubstantial. If the appellant was sober, he had no right, under the facts shown, to kill the officer unless he was in danger of death or great bodily harm at the hands of the officer. One resisting arrest by an unauthorized person is not justified in killing him, except to save himself from death or great bodily harm. Creighton v. Com., 83 Ky. 142, 4 Am. St. Rep. 143. In resisting a mere trespass arising from the attempt of another to arrest him without authority, a person has no right to kill the officer, unless in his necessary self-defense, Creighton v. Com., 84 Ky. 103, 4 Am. St. Rep. 193, and Neeley v. Com., 123 Ky. 1, 93 S. W. 596, 29 Ky. Law Rep. 408; Jackson v. Com. (Ky.) 93 S. W. 598, 29 Ky. Law Rep. 450. So, whether appellant was drunk or sober, his right of self-defense was the same. If the evidence for the commonwealth was true, the officer approached appellant with nothing in his hands and simply demanded his pistol, and, when appellant attempted to draw the pistol on the officer, he seized appellant's arm, telling him, "Don't do that," and appellant turned the pistol on the officer and shot him when he was in no danger at the officer's hands. While the evidence for the appellant showed that the officer was assaulting him with a drawn pistol, this defense was fairly submitted to the jury by the fourth instruction, as above shown, and no substantial right of the appellant under the evidence was prejudiced by the form of the instructions.

The appellant complains that the court admitted the evidence as to Taylor having called up the magistrate and the magistrate having issued a warrant against Bennie Howard, his brother. But this was only introductory to explain why the parties were there. The appellant's name was not mentioned in these matters, and clearly no substantial right of his was affected by the evidence. Objection is also made to the fact that the court allowed the jury to go out and view the premises. The reason for this was that there was a mass of evidence that witnesses for the commonwealth and defendant testified to things which they could not see from the point where they testified they stood. A view of the premises in such a case is often a great help to the jury. The court has a discretion in such matters and clearly that discretion was not abused here. The shooting occurred in January, and the trial came on in the summer. Some changes had been made in the view by reason of the leaves on the trees and a fence having been built, but evidence of all of this was before the jury, and clearly no substantial right of appellant was prejudiced by this. The above are the only grounds relied on for reversal. The verdict of the jury is well within the evidence. See Fleetwood v. Com., 80 Ky. 1.

Judgment affirmed.