## Phillips v. Commonwealth.

(Decided April 21, 1933.)

(As Modified on Denial of Rehearing May 12, 1933.)

J. C. CANTRELL for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Hillard Phillips, was indicted by the grand jury of Pike county, charging him with the willful murder of Jarvey Ward, and upon trial he was con-

victed of manslaughter and his punishment fixed at four years' confinement at hard labor in the state reformatory at Frankfort, Ky.

His motion and grounds for a new trial having been overruled, he appeals.

The grounds relied upon by him for reversal of the judgment are: (1) The indictment is defective and insufficient; (2) the court erred in admitting incompetent evidence; (3) the verdict of the jury is contrary to, and not supported by, the evidence; (4) the court erred in instructions Nos. 1, 2, 3, and 4 given the jury and in failing to give the whole law of the case.

We will consider these objections in the order named, first, that the indictment is defective and insufficient, urged upon the ground that the same charged the commission of the crime in "——— county."

Section 124, Criminal Code of Practice, provides that an indictment must be direct and certain as regards (1) the party charged; (2) the offense charged; and (3) the county in which the offense was committed, etc.

Appellant contends that the indictment here is not direct or certain as regards the county in which the offense was committed, and therefore is defective and insufficient.

This indictment, in so far as the appellant's objection is applicable thereto, is as follows:

"The Commonwealth of Kentucky
"Pike Circuit Court
"The Commonwealth of Kentucky
"Against        Indictment
"Hillard Phillips

"The Grand Jury of the County of Pike in the name and by the authority of the Commonwealth of Kentucky, accuse Hillard Phillips of the crime of Wilful Murder, committed in manner and form as follows to-wit:

"The said Hillard Phillips in the said County of ——— on the 25 day of February 1930. * * *"

Appellant's objection in this is clearly untenable, both for the reason that no demurrer is shown by the

record to have been filed to the indictment and therefore the sufficiency of the indictment, which could have been (but was not) tested by demurrer, is not now, upon appeal, here timely urged for the first time. Greer v. Commonwealth, 164 Ky. 396, 175 S. W. 665; Daniels v. Commonwealth, 181 Ky. 365, 205 S. W. 968; Russell v. Commonwealth, 234 Ky. 544, 28 S. W. (2d) 732; Hawks v. Commonwealth, 197 Ky. 196, 246 S. W. 116.

In the latter case the court said:

"With respect to the first ground it may be said that the record does not show that a demurrer was entered to the indictment. * * * We, therefore, cannot consider the alleged insufficiency of the indictment, in the absence of such ruling and exception thereto."

Moreover, this precise question was presented in the case of Romans v. Commonwealth, 231 Ky. 487, 21 S. W. (2d) 797, and there decided adversely to appellant's contention. The court there said:

"The indictment is captioned 'Pike Circuit Court.' So much of it as is material is as follows: 'The grand jury of the County of Pike * * * accuse Edward Romans of the crime of willful murder, committed in manner and form as follows, to-wit: The said Edward Romans in the said county of ———— on the 29th day of February, 1929, and before the finding of this indictment did * * * kill,' etc. It is contended in behalf of the appellant that the indictment does not state a public offense because the name of the county is left blank and was not given as required by the Code of Criminal Practice. The point is untenable, for while the specific name of the county is not given in the descriptive portion of the indictment, it does show that the crime was committed 'in the said county,' which of course referred to the county of Pike, as stated in the accusation. That was sufficient. Collins v. Commonwealth, 141 Ky. 564, 133 S. W. 233; Martin v. Commonwealth, 145 Ky. 752, 141 S. W. 54."

By appellant's second objection, based upon the court's admission of alleged incompetent evidence, he complains of the trial court's allowing the commonwealth's witness, Anna Phillips, to testify, over his objection, after she had remained in the courtroom and

heard all the previous testimony, in disobedience of the court's admonition that all the witnesses "had been placed under the rule and excluded from the court-room"; and that the appellant at the time, both objected to this witness testifying, and also then moved to exclude her testimony. He now insists that the court's overruling of his objection and motion and admitting her testimony resulted in prejudice to his substantial rights, in that the witness gave damaging testimony against the appellant in testifying as to an alleged conversation with appellant, that "he said he went on past Kenner's house up about the ford of the creek and then he said he thought he would shoot them all up as he went up and decided he would come back to the lower ones and shoot them up as he come back up," and also as to the acts and conduct of the appellant on the day of the homicide.

A like question as that presented by this objection was before this court in the recent case of McGee v. Commonwealth, 246 Ky. 445, 55 S. W. (2d) 382, wherein it was held that the ruling of the trial court, in permitting a witness to testify when he has remained in the courtroom after the rule has been requested and granted, will not be disturbed, unless it appears by the record that the court abused its discretion in so allowing the witness to testify to the prejudice of the defendant's substantial rights.

The testimony here complained of as incompetent, in its having been introduced before the jury under such circumstances, is substantially to the same effect as other similar testimony, heard and introduced upon the trial, so far as material, and we are of the opinion that no substantial prejudice was thereby caused the appellant in his defense; and therefore, if the court erred at all in allowing its admission, when considered with his restrictions and admonitions as to it at the time given the jury, we conclude that the same did not constitute any abuse of discretion, nor was it such when measured by the applicable rule announced in the McGee Case, supra.

Further complaint is made by appellant under this head that the court erred in allowing the common-wealth's witness, W. A. May, to relate the conversation had with appellant at the home of witness on the Friday next before the occurrence of the homicide on Sun-

day, without admonishing the jury as to the limited purpose of this evidence.

However, it is a well-settled rule that, the appellant having failed to request an admonition as to the purpose of this evidence, he waived his right to complain of it. In Mitchell v. Commonwealth, 227 Ky. 512, 13 S. W. (2d) 508, 509, the court, in considering and disposing of a like objection therein urged, said:

"In Decker v. Commonwealth, 195 Ky. 64, 241 S. W. 817, we said: 'In view of the situation thus presented by the record the rule in Wright v. Commonwealth, 155 Ky. 750 (160 S. W. 476), and Renaker v. Commonwealth, 172 Ky. 714 (189 S. W. 928), would seem to apply, which substantially declares that in order to permit an appellant to take advantage on appeal of error committed by the trial court in failing to admonish the jury to consider testimony only for a certain purpose, it must be made to appear from the record that the attention of the trial court was called at the time to the necessity for such admonition or the court requested to give it, neither of which was done here.'

"To the same effect are the cases of McCarty v. Commonwealth, 216 Ky. 110, 287 S. W. 363, and Anderson v. Commonwealth, 205 Ky. 369, 265 S. W. 824."

Appellant next complains that the verdict of the jury is contrary to, and not supported by, the law or the evidence.

For the discussion and disposal of this assignment of error, it is needful to here give a brief synopsis of the evidence, or resume of the facts which it conduces to show.

The evidence for the commonwealth was, briefly, that a few days before the homicide John Phillips, a relative of the appellant, had lost his barn by an incendiary fire, whereupon the appellant, who had been for some years engaged in the merchandise business at a place several miles distant from his kinsman's (John Phillips') home, had at once left his own home and business and came into this neighborhood for the purpose of apprehending the parties guilty of the barn burning.

The decedent, Jarvey Ward, was a young man some nineteen years of age, who lived with his brothers and father in this neighborhood, but who, it appears, had not been suspected of any connection with the barn burning, while Kenner West, a relative of John Phillips and a neighbor of the decedent, had been accused of the crime.

On December 1, 1929, the Sunday night of the homicide, the decedent, Jarvey Ward, together with his brothers, Clarence and Drury Ward, were at the home of Kenner West, as were also Homer Phillips, Harrison Murphy, Kenner West, and some others sitting by the fire with several members of the West family. The West home was situated near the public highway.

At about 7:30, these witnesses state that they heard appellant holler, "War, war, John Phillips sent me here to kill you all for burning his barn." He then began to shoot into the West home, causing all of them to run for shelter.

The decedent, with some of the others, left the house and started down the road, following his brother Clarence Ward and Kenner West who was armed.

When they had gone but a short distance down the road, appellant reappeared, riding a mule back up the road to within a few feet of them, when they state he began firing two pistols at them.

The decedent, who, according to the evidence, was at the time unarmed, was, during this encounter and firing of pistols, shot in the upper lip, the bullet ranging down through his mouth and lodging in his neck, from which injury he died within a few days thereafter.

The evidence is further that the appellant, after firing his two .38 caliber pistols, and also perhaps a high-powered rifle, at these parties, jumped off his mule and ran to cover and hiding upon a nearby hill.

These witnesses further state that appellant's fire was not returned by any of them until after he had shot the decedent and he had fallen to the ground.

The witness Miles Plymale, deputy sheriff of Pike county, testifies that he was called to the scene of the killing about two hours after its occurrence, when he found the appellant hiding upon a nearby hill and the

two .38 caliber pistols and the high-powered rifle laid where appellant told him he had left them. He states that appellant told him he had gone up there to try and make peace with these boys, and did not know what caused him to get into this thing; that he went up the creek by Kenner West's house, and "that bunch was setting in the house by the fire"; that he stopped and looked through the window at them a second time and when he got down the road a piece, he fired two or three shots to see what they would do, when he saw them come out of the house and "coming shooting," when he turned around and rode back to see what it meant; that he met two fellows coming down the road and told them to stop; and that he told them the third time to stop and "not rush up on him, but they come right on up in his face," and he went to shooting, and somebody behind him "turned loose to shooting," but he did not know who they were, and that he fired either five or seven times, and that when he had "shot empty" he threw his pistols down and ran, as he did not have time to reload, and that he shot until he saw two of them fall.

The appellant also suffered some injury in the affray through receiving a shot in the leg.

At the time appellant was indicted, he was confined at the Sprague Sanitarium at Lexington. He was, upon being returned to Pike county and a jury impaneled to hear proof as to his mental condition, found by its verdict to be a person of unsound mind and sent to the state hospital, where, after confinement for more than a year, he was released, when a second jury was impaneled at the April term of the Pike circuit court to again inquire into his mental condition, which, after hearing the evidence, returned a verdict finding him to be then a person of sound mind.

Upon appellant's trial in October, 1932, appellant's chief defense was that he was insane at the time he shot and killed the decedent. The appellant did not himself testify, but introduced a large number of witnesses in his effort to show that he was insane at the time of the homicide.

Most of these witnesses stated that they had been acquainted with the appellant for years, and that for some time before the homicide, in their opinion, the

appellant "had not acted right." Others testified that they saw the appellant soon after he shot the decedent, when he appeared nervous and excited and did not act naturally. O. A. Stump, the regular commonwealth's attorney, and Earl Scott, circuit court clerk, gave it as their opinion that he was insane, without stating the facts upon which their opinion was based. One of his witnesses gave it as his opinion that he was deranged because he had been overinsistent that the witness, when stopping at his home, should stay and have dinner with him; another expressed the opinion that he was of unsound mind because, when working at an election, he had been "so bold" about what he did. Dr. Flanary states that his mental condition was bad, both when he saw him in July next before the homicide, when at work in his store, and after the homicide, when he was brought to the hospital for treatment of his injured leg.

Appellant further contends that the verdict of guilty returned against him by the jury was unwarranted and against the evidence because, while it showed that he had two .38 caliber pistols, there was evidence that the decedent was killed by a bullet fired from a .32 caliber gun. Therefore, he contends, it must follow that the appellant did not fire the shot that killed Ward.

However, there is further evidence that the appellant was upon this occasion also armed with and shot a rifle, which is not shown to have been of .38 caliber, nor, in fact, that it was not of .32 caliber, and also that another pistol of smaller caliber was found, the sheriff testifies, within a few feet of where the encounter occurred, thus presenting to the jury evidence that the appellant could have shot the decedent with his rifle and have thus inflicted a smaller sized bullet wound than would have been the case had he shot him with one of his larger pistols. There was thus left for the jury's determination, upon its hearing and consideration of all this evidence, the question of with what and whose gun the decedent had been shot and the circumstances of the shooting. There was before it evidence sufficient to sustain its verdict, its weight and credibility presenting a problem for the jury's decision, and its verdict is not palpably against the evidence when it was reasonable for the jury to find from the entire record.

the accused guilty of the crime charged. Shepherd v. Commonwealth, 236 Ky. 292, 33 S. W. (2d) 4; Barton v. Commonwealth, 240 Ky. 786, 43 S. W. (2d) 55; Abdon v. Commonwealth, 237 Ky. 21, 34 S. W. (2d) 742; Newsome v. Commonwealth, 236 Ky. 344, 33 S. W. (2d) 36; Tussey v. Commonwealth, 241 Ky. 91, 43 S. W. (2d) 351.

The appellant's final objection relates to the instructions given upon the trial, which he insists, taken as a whole, are misleading, in that they relieve the commonwealth of its burden, and fail to give the appellant the benefit of his plea of insanity, in that he was required to exercise reasonable judgment before being allowed to defend himself, when under appellant's evidence he was insane at the time of the shooting. He contends the self-defense instruction should have contained an express statement limiting its application to a person of sound mind, and that the court should have instructed the jury to find appellant not guilty because of the deficiency in the indictment in failing to charge the offense was committed in Pike county, an insistence hereinabove discussed and disposed of.

We are of the opinion that these contentions are also without merit.

Instruction No. 1 as given by the court was that the jury should find the defendant guilty if they believed from the evidence, beyond a reasonable doubt, that the defendant willfully, and not in his necessary or apparently necessary self-defense, or under the circumstances set out in instruction No. 3, shot Jarvey Ward with a pistol, etc.

This instruction expressly required that the jury, in order to find the defendant guilty of the charge upon which he was being tried, should beyond a reasonable doubt find that he had shot Jarvey Ward not in his necessary or apparently necessary self-defense, or under the circumstances set out in instruction No. 3, which was an insanity instruction given by the court, and which was as follows:

"Although you may believe from the evidence, beyond a reasonable doubt, that the defendant Hillard Phillips shot and killed the deceased, Jarvey Ward, yet if you further believe from the evidence

that at the time of the killing the said Hillard Phillips was of unsound mind, then you should acquit him.

"The law presumes every man sane until the contrary is shown by the evidence, and before the defendant can be excused on the ground of insanity the jury must believe from the evidence that the defendant was, at the time of the killing, without sufficient reason to know what he was doing, or had not sufficient reason to know right from wrong, or that, as a result of mental unsoundness he had not then sufficient will power to govern his actions by reason of some insane impulse which he could not resist or control."

We are of the opinion that these instructions, when taken and considered together, very amply and fairly gave to the appellant the full measure of protection both as to his right of self-defense, if at the time sane, as well as a general immunity from the responsibility for his act in shooting the decedent, if it was the act of one who at the time of the killing was without sufficient reason to know what he was doing or who did not know right from wrong, or was the result of mental unsoundness, destroying his will power, impelling him to act under an insane, irresistible impulse. The instructions, considered as a whole, thus clearly gave the appellant a proper self-defense instruction even should we concede that it would have been better to have qualified the self-defense instruction itself, as insisted upon by appellant. Yet, under the instructions as given, the jury could not have misunderstood the rights of the appellant, nor was he prejudiced by the failure to include the suggested qualification in the instruction.

The appellant's contention is fully answered by the provisions of sections 340 and 353 of the Criminal Code of Practice; also in the late case of Voils v. Commonwealth, 229 Ky. 305, 17 S. W. (2d) 238, 241, the rule was announced that "the jury is given the law of a case in the instructions as a whole, and they understand that they must be read and considered together." See, also, Cupp v. Commonwealth, 208 Ky. 231, 270 S. W. 774, 775; Frazier v. Commonwealth, 243 Ky. 686, 49 S. W. (2d) 554.

As to appellant's objection that the instruction as given relieved the commonwealth of its burden, it is sufficient to say that, when the accused relies on some separate matter of defense, as insanity, not embraced in the issue, made upon a plea of "not guilty," the burden of proof to establish such matter by the evidence is on the accused, inasmuch as the sanity of all men is presumed, and what the law presumes to exist need not be alleged or proved as contradistinguished from whatever is not presumed to exist and is essential to complete the charge must be alleged and proved.

It might be that this unfortunate appellant is not guilty, but such doubt might exist in practically all cases of this character, and here an impartial jury has, perhaps by the very reason of appellant's suspected misfortune, dealt very mercifully and leniently with him in imposing, as a punishment for his wanton killing of the deceased, Jarvey Ward, the very light penalty of four years' imprisonment.

We are therefore, upon a careful consideration and review of the whole case, of the opinion that the appellant has had a fair and impartial trial, and the judgment is therefore affirmed.