## Cook v. Commonwealth.

(Decided Feb. 18, 1936.)

E. C. MOORE, R. E. LLOYD and O. B. BERTRAM for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The grand jury of the Russell circuit court indicted the appellant for the willful murder of Sam Jones. He was tried and convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a term of five years. He appeals.

In his motion and grounds for a new trial numerous errors are alleged, but in brief for appellant only three of the items are discussed: (1) The admission of incompetent evidence; (2) the instructons are erroneous; and (3) the verdict is not supported by the evidence and is contrary to the law.

At the time of the homicide the appellant and the deceased were each about twenty-one years old and had lived in the same community and had attended the same school. There is no evidence of a direct nature tending to show any ill feelings between the boys except by inference from certain circumstances which we will hereinafter discuss.

On a Saturday afternoon in February, 1934, appellant and deceased and a number of other young men met at a school house to play basket ball. It appears that they had whisky and most of them, if not all, were intoxicated. The deceased had a .22 caliber pistol, and, according to the evidence of Clendon Jones, broth-

er of the deceased, appellant borrowed the pistol from deceased; but, according to the testimony of the appellant, Clendon Jones suggested to him that he get the pistol away from deceased for fear that he would get into trouble with it. Clendon Jones and some of the other boys left the ball yard and went around to the opposite side of the school house and Clendon Jones invited appellant to go with them to take another drink. The deceased did not go with them but appeared later. While they were assembled behind the school house, appellant had the pistol in his hand and was handling it in a reckless manner making threatening gestures with it toward the boys there, and one of them cautioned him about his reckless use of the pistol, and about that time the deceased approached them. Up to this point there is no material conflict in the evidence.

Clendon Jones, who testified for the commonwealth, related what happened in the following language:

"A. Me and Claude was back there behind the school house and Logan pushed me and Claude two or three times with a pistol, and then somebody hollered for Sam and Sam come up there, and he shot him. * * *

"Q. Just tell what happened now when he come up there? A. He just shot him.

"Q. They have any words or conversation before he shot him? A. No sir.

"Q. Either of them say anything? A. No sir.

"Q. How far apart were they when he shot him? A. Six steps.

"Q. Logan say anything before he fired the shot? A. He said he was going to shoot.

"Q. Who did he tell that? A. I don't know.

"Q. Just tell what happened. A. He just raised up that way and said he was going to shoot and the gun fired."

After deceased was shot, he walked to the other end of the school house and slumped over and died. Appellant left the scene of the shooting and threw the pistol under the school building. Clendon Jones immediately left the scene of the shooting and went to his

home, which was a short distance away, and within a few minutes he returned with his mother, Mrs. Nettie Jones, and his younger brother, Henry Jones. Mrs. Jones testified that when she appeared at the place where her son was killed she saw appellant and asked him who killed her son and he said he did, and she then asked him why he did so and he said he did not know.

Henry Jones testified that when appellant was asked where the pistol was he said it was under the school house floor, and he and appellant went to the school house and found the pistol some distance under the building covered up in the sand, and appellant "scratched around in the sand with his hands" and uncovered it. Another witness testified that he examined the body and clothing of deceased and he found nothing indicating powder burn on either his clothes or body.

Attie May Jones, a sister of the deceased, testifying in rebuttal, said that a short time before her brother was killed and after he and his wife had separated, she saw appellant and her brother on the platform of a store and heard appellant say to her brother, "You G—— d—— son-of-a-b——, I am tired of you saying that I have been running after your wife," or words of like import.

Appellant, testifying in his own behalf, told of some drinking among the boys there just previous to the homicide and told of his use of the pistol toward the other boys just previous to the shooting of the deceased, as follows:

"Q. Just tell now what took place there at that time? A. Well, Howard Brown left. He went around the lower side of the schoolhouse. Claude Western and Clendon and myself and Sam was all standing there. I had the gun in my hand and I sorter touched some of them with it like that (indicating), and they said 'Be careful, it might go off', and I dropped it down like this (indicating). Sam walked around to me like that and grabbed it. I was standing like this, holding it like that (indicating). He jerked it, and it went off.

"Q. Where was Sam? A. He walked around like this, sorter on this side of me.

"Q. What happened? A. I turned my head off talking to the other boys and he grabbed it."

When asked what became of the pistol when it fired, he said he held it in his hand a minute and Claude went around the house and Sam (deceased) went off and it excited him and he threw the pistol down. He said that he had no intention to shoot deceased and that the firing of the pistol was an accident resulting from deceased's grabbing and jerking it. He further testified that immediately after deceased was shot, Clendon Jones said to him, "You have killed my brother but I know it was an accident shot."

Claude Western, the only other eyewitness to the shooting, corroborated appellant. He said, "Well, Logan had Sam's gun and Sam said he wanted his gun and Logan had it out, and Sam reached over to get it and it fired," and that deceased had hold of the gun at the time it fired.

A number of other witnesses for appellant testified that they heard Clendon Jones say that the shooting was an accident. However, Jones denied making that statement and Mrs. Jones also denied that she heard him make any such statement.

The incompetent evidence complained of by appellant is that John Jones, father of the deceased, testified that his deceased son and his wife had been separated and living apart for about three months before the homicide, and that he saw appellant and deceased's wife in the woods together after the separation, and before the homicide. Counsel for defendant objected to this testimony and the court overruled the objections at that time, but later admonished the jury as follows:

"The fact that this defendant and the dead man's wife were together before this occurred is not competent at this time and you need not consider it at this time unless it is made competent further along. You will not consider it for any purpose now."

It is insisted that the court's admonition in the manner given was prejudcial error. If it be conceded that the testimony was improper, in view of the admonition of the court and the later testimony of Attie May Jones which was competent on that point, we do not think the testimony of John Jones was prejudicial.

We conclude that the evidence was sufficient to take the case to the jury and to support the verdict.

The next complaint is directed to the instructions. The court instructed the jury on voluntary manslaughter, upon two phases of the case—one predicated upon sudden heat, and passion or sudden affray, and another on reckless use of the pistol. It is insisted that there was nothing in the evidence warranting an instruction on sudden affray or sudden heat and passion and, therefore, the instruction was erroneous. To support this contention, the cases of Kelly v. Com., 259 Ky. 770, 83 S. W. (2d) 489, and Rowe v. Com., 206 Ky. 803, 268 S. W. 571, are cited. In the Kelly Case the defendant denied any connection with or knowledge of the homicide and pleaded an alibi. The court held that under the evidence of the case a voluntary manslaughter instruction should not have been given and was prejudicial, for the jury might well have been unwilling to convict him of murder on the evidence, and yet have been willing to find him guilty of voluntary manslaughter. In the Rowe Case the deceased was riding in an automobile and Rowe, who was an officer, signaled the driver to stop the car, which he failed to do, and then Rowe fired a shot at the tires of the car, as he claimed, for the purpose only to induce the driver to stop and accidentally shot one of the occupants of the car. Under that state of facts the court held that there was no evidence warranting a voluntary manslaughter instruction based upon sudden affray or sudden heat and passion.

It is the well-known rule that the necessity for an instruction largely depends upon the facts in each particular case. Payne v. Com., 255 Ky. 533, 75 S. W. (2d) 14. In the present case the evidence is quite different from the evidence in the Kelly and Rowe cases supra. It is shown by undisputed evidence that appellant had obtained the deceased's pistol from him on the ball ground a short while previous to the homicide, and, while appellant and some of the other boys were assembled behind the schoolhouse, appellant was handling the pistol in a threatening manner, for which they cautioned him, and according to the evidence of Clendon Jones, at that time somebody hollered for the deceased and he immediately approached them and appellant shot him. Claude Western's evidence is to the effect

that deceased wanted his pistol and took hold of it at the time the shot was fired. This evidence, considered in connection with the evidence of Attie May Jones, relating to the conversation she heard between the deceased and appellant about deceased's wife, as above related, may have been sufficient to warrant the jury to believe that there was some feeling between appellant and deceased and that appellant resented the deceased's approaching him and stating that he wanted his pistol; or, if the jury believed Clendon Jones' evidence to the effect that when deceased approached them appellant pointed the pistol at him and declared his intention to shoot, the same inference obtains. Upon the proven facts and circumstances, we think the voluntary manslaughter instruction predicated upon sudden heat and passion or sudden affray was proper.

It is the further insistence that even though the evidence justifies the giving of the instruction based upon sudden heat and passion or sudden affray, there was no evidence upon which to base an instruction predicated upon the reckless use of the pistol, because at the time the pistol was fired appellant was merely holding it in his hand, his arm dropped down by his side, and was not handling it in a reckless or dangerous manner. Ths was appellant's theory of the case, and if there were no conflict in the evidence as to the manner in which he was handling the pistol, the case might well come within the rule enunciated in Davis. v. Com., 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551, which case is relied on for appellant. But it must not be overlooked that the evidence was conflicting as to the manner in which he was handling the pistol. According to the evidence of Clendon Jones, on the approach of the deceased appellant raised the pistol pointing it at him and declared his intentions to shoot, and immediately before the shooting appellant was handling the pistol in a reckless manner among the other boys. The jury may have believed that the pointing of the pistol at deceased was a continuation of the same manner in which he had just previously been handling it, without any actual intention to fire it. We do not know upon which theory of the case the jury found appellant guilty, that is, under the sudden affray instruction or the reckless use of the pistol, but that is immaterial, for the evidence justified an instruction upon both theories.

It is also contended that the language of both instructions render them confusing. Complaint is made that the court used the pronoun "he" meaning defendant, and that this was ambiguous and confusing because the jury might not have understood to whom the court referred—the defendant or deceased. There is also complaint made that the court used the phrase "that the killing resulted from the careless use of the pistol" without specifically saying defendant's careless use. But this language was preceded by other language relating to defendant's handling of the pistol. While more apt and concise language might have been used in the instruction, yet we do not think they were misleading. We think the jury understood that appellant was being tried for shooting the deceased—not for deceased shooting himself. But if it be conceded that these instructions standing alone might have been ambiguous, any such ambiguities, if any, were removed by instruction No. 5, as follows:

"If you should believe from this evidence that the deceased grabbed the pistol and by so doing caused it to be discharged without any intention or carelessness upon the part of the defendant you will find the defendant not guilty."

It is the well-established rule that isolated portions of instructions are not sufficient to warrant a reversal. All instructions must be considered together to determine whether there was error. Howard v. Com., 246 Ky. 738, 56 S. W. (2d) 362; Phillips v. Com., 248 Ky. 665, 59 S. W. (2d) 579. However, there may be certain exceptions to this general rule, but we think this case comes within the rule, not the exception thereto, since instruction No. 5 made clear any ambiguity which might have been contained in previous instructions.

It is also insisted that the court should have given a self-defense instruction. We do not think that there was any evidence warranting such instruction. Appellant's theory of the case is that the firing of the pistol was an accident caused by the deceased's grabbing and jerking it. He said that he and the deceased were good friends and there was no feeling between them and he does not claim that deceased was attempting to do him any harm whatever, nor did any of the oth-

er witnesses testify to any demonstrations or attempts by the deceased to assault appellant or otherwise harm him.

Upon examination of the instructions as a whole, we conclude that they were substantially correct.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.